# In re Royersford Bridge.

Proceedings were instituted in the Court of Quarter Sessions, under the Acts of May 8th, 1876, P. L. 131, and May 3d, 1878, P. L. 41; to free a toll bridge, built by a company incorporated by the Act of February 27th, 1839, P. L. 39, the charter of which provided, that if it were thought proper to purchase said bridge for the purpose of making it a free bridge, the said company should be obliged to sell the said bridge for such sum as a majority of twelve disinterested men, appointed by the Court of Common Pleas, might adjudge the same to be worth. *Held*, (a) that the said provision in the Act of the corporation was not repealed by the Acts of May 8th, 1876, and May 3d, 1878. (b) That the Court of Quarter Sessions had no jurisdiction in the matter.

April 22d, 1886. Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT, GREEN and CLARK, JJ.

CERTIORARI to the Court of Quarter Sessions of the Peace of *Montgomery County:* Of January Term, 1866, No. 434.

The record showed the following :

On the 8th of June, 1885, there was presented to the Court of Quarter Sessions of Montgomery County, a petition, signed by eighty-six residents and taxpayers of the county, representing: That the bridge crossing the Schuylkill river between the boroughs of Royersford in Montgomery County, and Spring City in Chester county, and owned by the Royersford Bridge Company, was necessary for public use, and that the payment of tolls thereon was an unjust burden on the travelling public, and praying the court to appoint viewers in accordance with the Act of May 8th, 1876, and its supplements.

On the same day the said court appointed viewers and made a decree defining their duties, in conformity with the Act of Assembly.

On September 7th, 1885, the report of the viewers was filed in favor of abolishing tolls on said bridge, and assessed the damages at $25,000.

On October 21st, 1885, the following exceptions were filed to the report of the viewers by the Royersford Bridge Company:

1st. The proceedings are irregular, illegal and void.

[In re Royersford Bridge.]

2d. There never was a report filed at all, and the paper purporting to be a report is not a matter of record, and does not show that it ever was filed in the proper court.

3d. The order to view was returned and filed, but no report was ever filed, or if filed at all, was filed before the proper time.

4th. The report was not made to the next term but before the next term.

5th. The Act of Assembly under which said bridge is taken is unconstitutional and void, the legislature not having the power to limit the damages for the taking of private property for public use.

6th. The viewers met at different times and different places, and erroneously report as having met but a single time and at a single place.

7th. The viewers do not report what property of said company is taken, whether the franchise and the bridge together with all the property owned by said company, or whether the franchise and bridge alone.

8th. Said company owns in connection with said franchise and bridge a house and tract of land appurtenant to the bridge structure, and the report does not set forth whether this be taken or not as it should do before the court and grand jury can act on their report, and before it can be known for what viewers assessed damages, or what is required by taking of the same.

9th. The report does not show what property is taken or what part of the said corporation's property is necessary for public accommodation.

10th. The jury of viewers in their report assessed in the estimate of their damages a house and lot of land, which the said counties of Chester and Montgomery have no right to take, the same not being necessary for public use and no part of the bridge.

11th. The proceedings are without authority of law, and this court had no jurisdiction in the matter.

The court set aside the proceedings, BOYER, P. J. filing the following opinion:

There is nothing of substance in the 2d, 3d and 4th exceptions relating to the filing of the report. It was filed in open court before the term to which it was returnable had commenced, but no advantage was thereby gained by the petitioners, the time for exceptions allowed being the same as if the report had been withheld until the first day of that term. Nor is there anything which needs comment in the 6th exception, for the viewers were not bound to state their various adjournments after their first meeting for view, if there were any such adjournments.

· [In re Royersford Bridge.]

The 7th, 8th and 9th exceptions repeating each other, are, I think, well taken, for the report ought to state what property, if any, besides the bridge structure itself, the viewers considered as essential to the proper uses of the bridge, and included in their valuation. The testimony shows that they included a toll house about eleven yards from the end of the wing wall, and a dwelling house in which the toll-keeper re-sides, and a lot of land connected therewith. All these, if necessary appurtenances to the bridge itself, the viewers had the right to include; but they should have so stated in their report, to preclude future dispute or uncertainty. If this exception stood alone, the omission might be corrected by a reference back to the same viewers for that purpose, and we should be inclined so to do, were it not for considerations involved in the 1st and 11th exceptions, which assail the jurisdiction of the court.

The Royersford Bridge Company was incorporated by an Act of Assembly approved February 27th, 1839, (See P. L. 31). Its 16th section provides that, "If at any time here-after the counties of Montgomery and Chester, or either of them, the State of Pennsylvania, or any incorporate town in the State, shall think proper to purchase the said bridge for the purpose of making it a free bridge, the said company shall be obliged to sell the said bridge for such sum as a majority of twelve disinterested men appointed by the Court of Common Pleas in either of the above mentioned counties may adjudge the same to be worth."

By the mode of proceeding for freeing this bridge provided for by its charter, the jurisdiction for the appointment of a jury to fix the valuation is not invested in the Court of Quar-ter Sessions, but in the Court of Common Pleas; and the appointment of a jury of twelve men is directed.

The bridge in question was built by the company upon the faith of the privileges and restrictions guaranteed by its charter. Assuming, however, that this would not prevent the legislature by a general law to provide another mode under which bridges in general might be taken for public use and made free from tolls, including those whose charters contained special provisions upon this subject, the same section of the Act of 8th of May, 1876, under which this proceeding is authorized, provides that "this Act shall not be construed to repeal any law heretofore passed in relation to the purchase of any particular bridge by any county." It is not a question whether the general law provides a better method; but whether the Bridge Company have a right to stand upon the method prescribed by their charter, which as we have seen

the general law leaves unrepealed. If they have this right, their exception to the jurisdiction of this court must prevail.

There is another ground upon which the validity of these proceedings is assailed by the Bridge Company. The alleged unconstitutionality of the Acts' of Assembly authorizing the taking of the property of bridge corporations for free public use when on the line between two adjoining counties, but limiting the amount of damages to be paid by each county, which by the Act of 1876 was fixed at $10,000, and now at $15,000, as amended by Act of May 3d, 1878, P. L. 41.

This raises a question which is susceptible of several different interpretations, but it seems manifest at the outset that no bridge company authorized to take toll by its charter can be compelled to surrender its property for public use for a sum less than it is worth at a valuation legally made, for that would not be a "just compensation" such as the Constitution guarantees. What then is the effect of the limitation incorporated into the Act? Is the part to which it applies wholly unconstitutional, and does it render void upon that ground the section which authorizes the proceeding for freeing an inter-county bridge? Or is the section valid, giving the authority so to free bridges on the line of two counties, and the proviso only void? In the latter case are the proceedings to fall if an assessment of over $30,000 is finally reached upon appeal? Or shall the proceedings stand and the bridge be free, but the several counties answerable for the damages, no matter how much they may in the end exceed the limit provided by the Act?

These are inquiries of practical importance, not only in this case, but in others coming on, and an assuring solution of them can be given only by the tribunal empowered to pronounce the final interpretation of the law. The action of the court now will afford an opportunity for such submission and determination.

Now, to wit, March 1st, 1886, the report and proceedings are set aside upon the first, seventh, eighth, ninth and eleventh exceptions.

The petitioners thereupon took this writ, assigning for error said action of the court.

*N. H. Larzelere* and *Thomas S. Butler*, for appellants.—By the Act of Assembly creating the company, the right to free the bridge is conferred upon three classes of subjects: The counties of Montgomery and Chester, or either of them, the State of Pennsylvania, and any incorporated town in the State. The authority thus given to these three subjects may or may

not be exercised by them, dependent entirely upon their discretion.

By the Act of May 8th, 1876, P. L., 131, the authority of free bridges of this kind is conferred upon another class of subjects, to wit, twenty or more residents and taxpayers of the county where such bridge is situated. By the first section of this Act the Court of Quarter Sessions has jurisdiction to appoint a jury of view on the petition of twenty residents and tax-payers for the purpose of freeing a toll bridge. The proviso to the fifth section of this Act is as follows : " That this Act shall not be construed to repeal any law heretofore passed in relation to the purchase of any particular bridge in any county."

The court below, in sustaining the eleventh exception, held that the fifteenth section of the Act incorporating the Royersford Bridge Company was not repealed by the Act of 1876. This is admitted by the petitioners. But it is contended by them that the Act of 1876, under which they have proceeded, can stand along with the special provisions relating to the Royersford Bridge Company without conflicting therewith, and that to the three classes of subjects which theretofore had power to free the Royersford bridge, and similar bridges, one more class is added by the Act of 1876.

" Whenever two Acts can be made to stand together it is the duty of a judge to give both of them full effect. With much stronger reason it applies to statutes which give powers to different persons. If the powers can subsist together the grant of one is not a withdrawal of the others ": Brown v. County Commissioners, 9 Harris, 43.

The court below concedes that the legislature, by a general law, would have the right to provide another method by which bridges might be taken for public use, than those prescribed by the charters, and that were it not for the proviso to the Act of 1876, the bridge company could not insist upon the method being pursued as provided in its charter, for that method would, in such case, be superseded by the Act of 1876.

The legislature intended to give an additional method to that found in the charters, and to confer the right upon another class of subjects. At the same time it was not intended to take from any of the before mentioned subjects the rights and privileges they enjoyed in relation to the freeing of bridges before the passage of the Act of 1876.

If either county, Chester or Montgomery, the State of Pennsylvania, or any incorporated town in the State, should see proper to take this bridge for public use, the proceedings would still have to be in the manner provided by the Act in·

corporating the bridge company; so far as they are concerned, no change has been wrought by the Act of 1876. The legislature intended, by the Act of 1876, and its supplement of May 5th, 1878, P. L., 41, to give the people power to abolish the toll on bridges of this kind where the subjects named in the Charter Act failed to exercise their privileges to that end.

Before the passage of the Act of 1876, upon the failure of the subjects above mentioned to act, there was no method by which the bridge could be taken for public use, however desirable it might be. The Act of 1876 was designed to remedy this defect in the laws, yet, at the same time, not to destroy the optional rights of those subjects.

" A statute made *pro bono publico* shall be construed in such manner that it may, as far as possible, attain the end proposed. All statutes made for the convenience of the public ought to have a liberal construction, to be expounded largely, and not with restriction ": Dwarris on Statutes, Potter's edition, p. 234.

*E. L. Hallman* and *H. C. Boyd* (*H. D. Saylor* with them), for appellees.—Was this the proper method of procedure, or can this bridge be taken only by proceeding according to the method provided in the charter?

This question is not a matter of much importance to the defendant in error, for under either method of procedure the defendant in error is safe. Its property must be paid for before it is taken, and it matters not to them how the damages are assessed if a just compensation is had for its valuable property and franchise.

The second question involves the constitutionality of that part of the Act of May 3d, 1878, P. L., 42, limiting the amount of damages to be recovered to $30,000.

The legislature cannot affect a vested right by a subsequent statute acting on the remedy: McCabe *v.* Emerson, 18 P. S. R., 3.

Therefore a mere change or enlargement of jurisdiction, such as created by the Act of May 8th, 1876, P. L., 131, and a mere change in the mode of taking the bridge and indemnifying the bridge company, from that prescribed in the company's charter, might not, in itself, be ground for valid objection had not a further limitation been imposed by the amendment of May 3d, 1878, P. L., 41, which restricted the amount that the bridge company could secure from the counties of Montgomery and Chester to $15,000 from each.

No such restriction is contained in the company's charter, and sec. 10 of Art. I. of the Constitution of 1874 expressly commands that "private property (shall not) be taken or

applied to public use without authority of law, and without just compensation being first made and secured."

And the spirit and intention of this provision is shown by the prohibition of sec. 21, Art. III., as follows: "No Act of the General Assembly shall limit the amount to be recorded for injuries resulting in death or from injuries to persons or property."

This constitutional provision has been held to abrogate not only future limitations, but even those contained in laws then existing: Lewis v. Hollahan, 103 P. S. R., 425.

Nor do we contend that this unconstitutional clause of limitation vitiates the whole Act, and prevents the mode therein directed from being adopted when freed from its unlawful limitation.

But we do maintain that before proceedings can be legally undertaken, under this Act, to free the Royersford bridge, or any other between two counties in this State, this unconstitutional provision must first be removed, either by legislation or the limiting effect of the clause annulled by the direct instruction of the lower court to the jury of view that it must be disregarded in their consideration of the amount of damage.

Mr. Chief Justice MERCUR delivered the opinion of the court, May 10th, 1886.

The corporation which owns this bridge was incorporated under a special Act of 27th February, 1839. The bridge is over the Schuylkill river, at a point where the river constitutes a boundary line between the counties of Montgomery and Chester. The Act incorporating the company provides if at any time either of said counties, or both of them, or the State, or any incorporated town therein, desires to purchase said bridge for the purpose of making it a free bridge, the company shall sell the same for such sum as a majority of twelve disinterested men, appointed by the Court of Common Pleas of either of said counties, may adjudge the same to be worth. This provision does not appear to have been in any way changed. The Acts of 8th May, 1876, and of 3d May, 1878, have not done so. The former of them expressly declares "the Act shall not be construed to repeal any law heretofore passed in relation to the purchase of any particular bridge by any county." No Act of Assembly cited has provided any manner of purchase and sale of this bridge other than that designated by the Act incorporating the company. Jurisdiction to appoint viewers to assess the value of the bridge, and to order and confirm the sale thereof, is given to a court of Common Pleas only. It follows, the learned judge

correctly held, that the Court of Quarter Sessions had no jurisdiction of the present application to divest the title of the company to its bridge. There was, therefore, no error in setting aside the report of the viewers and all previous proceedings.

Judgment affirmed.